UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LINDA S. LEVERICH,

       Plaintiff,                            Case No. 2:16-cv-163

v.                                        HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

## **OPINION**

On January 7, 2013, Plaintiff Linda S. Leverich filed an application for supplemental security income (SSI) benefits. See Transcript of Administrative Hearing. (PageID.277-284). Plaintiff alleges that she became disabled due to nerve damage in her neck, an injured arm, depression, pain in her right leg, diabetic seizures, and brain damage. (PageID.319). Plaintiff's application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). ALJ Charles Arnold held a hearing on December 19, 2014. At the hearing, Plaintiff was represented by Kenneth Zarrillo. Plaintiff and Vocational Expert Jeffrey Carlisle testified. In a decision issued on February 27, 2015, the ALJ denied Plaintiff's claim for benefits. (PageID.44-55).

The ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy given Plaintiff's residual functional capacity (RFC) and, therefore, concluded that Plaintiff was not under a "disability" as defined by the Social Security Act (20 C.F.R. § 416.920(g)). The ALJ's decision became the agency's final decision when the Appeals

Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the agency's final decision denying her request for disability benefits.[1]

Plaintiff was 53 at the time of the hearing and had an eleventh grade high school education. (PageID.40-41). Plaintiff had no income and was living with a family friend who was helping her financially. (PageID.41). Plaintiff had not worked since January 2013. Plaintiff could read and write. She lost her driver's license after she was arrested and received a fine related to prostitution. (PageID.41-42). She testified that she did "not really" drink alcohol, but that she had been arrested for driving under the influence about three or four years before the hearing. (PageID.42).

Plaintiff has severe pain from a neck injury that caused degeneration in her cervical spine at C5-C6. (PageID.43). The pain which radiates from her neck to her right arm feels better when she is lying down, but is worse after she wakes-up. *Id*. She describes the pain as sharp. *Id*. She has trouble writing for extended periods, and difficulty handling smaller objects such as buttons and zippers. (PageID.45). She experiences headaches once every three days and is sensitive to light. *Id*. She is unable to work when she gets headaches. (PageID.46). Plaintiff states that she also experiences severe pain in her left hip. (PageID.46-47). Plaintiff also described severe pain in her right arm that causes her to drop things. (PageID.48).

Plaintiff experiences daily depression that causes her to withdraw from other people and to cry at least weekly. (PageID.49-50). Plaintiff describes daily panic attacks or attacks at least a couple of times per week that cause her to hyperventilate and which could last all day. (PageID.51).

---

[1] Both parties consented to proceed before a Magistrate Judge on October 26, 2016.

Plaintiff's hip causes her to experience discomfort while sitting. She feels like she can only sit for ten minutes before she needs to stand-up. (PageID.52). She can only stand-up for two to five minutes before she has to sit back down to gather her strength. *Id*. She can only walk for about 30 feet and cannot lift anything without dropping. (PageID.53). Plaintiff testified that she spends her average day watching television, sitting down, making her bed, and doing dishes, but she cannot hold things. (PageID.54). Plaintiff is unable to cook a full meal because she cannot stand, but is able to use a microwave to make something quick. (PageID.55). She has trouble dressing due to her hip. *Id*. She shops for groceries by holding onto the cart. (PageID.56). She has trouble sleeping due to neck pain and usually takes one or two half hour or longer naps during the day. *Id*.

The vocational expert testified that Plaintiff had worked as an unskilled worker at a heavy exertion level in her past employment as a nursery laborer, and as a semi-skilled worker at a sedentary level as a telemarketer. (PageID.57). Based upon her functional capacity, the ALJ placed restrictions on Plaintiff's ability to perform light, low stress work that had no production demands, and involves simple, routine, repetitive tasks with simple job instructions, that did not involve any interaction with the general public, minimal contact with co-workers, with the additional limitations of no constant handling, feeling, fingering, or grasping with the right hand. (PageID.58). The vocational expert testified that Plaintiff could perform jobs such as a cleaner in a housekeeping setting (DOT number 323.687-014), with 10,000 jobs statewide and 130,000 jobs nationally, as an advertising material distributor (DOT number 230.687-010), with 1,200 jobs statewide and 48,000 jobs nationally, and as sales attendant (DOT number 299.677-010), with 15,000 jobs statewide and 205,000 jobs nationally. (PageID.59). The vocational expert testified

that if an individual was limited to only occasional handling and fingering with the dominant right arm, that restriction would eliminate the individual from competitive employment. (PageID.60).

The ALJ determined that Plaintiff suffers from degenerative disc disease of the cervical spine, osteoarthritis, and depression/anxiety disorder. (PageID.46). Based on these conditions and the ALJ's determination of Plaintiff's physical and mental capabilities, the ALJ concluded that Plaintiff could not perform her past relevant work as a nursery worker and a telemarketer. (PageID.53). However, the ALJ concluded that there were other jobs existing in significant numbers in the state and national economy that Plaintiff could perform. (PageID.54).

After the Appeals Council denied Plaintiff's appeal, Plaintiff filed this action asserting that the ALJ's decision to deny SSI benefits was improper because the jobs the ALJ stated that Plaintiff could perform are inconsistent with the ALJ's finding that Plaintiff must not have interaction with the public. Plaintiff points out that each of the positions require interaction with the public in a public setting according to their definitions in the *Dictionary of Occupational Titles* (DOT). Plaintiff further argues that the ALJ failed to consider the requirement based upon the consultant examiner's medical recommendation that Plaintiff needed use of an assistance device, such as a cane or walker. Plaintiff also asserts that the Appeals Council failed to properly consider new and additional medical evidence relating to Plaintiff's injuries after she was struck by a vehicle. The Commissioner has filed a response arguing that the ALJ decision is supported by substantial evidence. The Commissioner attached the medical evidence relating to the vehicle accident that Plaintiff provided to the Appeals Council. Plaintiff has filed a motion to strike that evidence arguing that it is improper for the Court to consider that new evidence because the ALJ never considered it in making his decision.

"[R]eview of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date for SSI benefits on January 7, 2013. (PageID.46). At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, osteoarthritis, depression/anxiety disorder. The ALJ determined that Plaintiff had a successful treatment history for diabetic seizures and hypoglycemia. (PageID.46). At step three, the ALJ determined that Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. (PageID.47). At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform light work, as defined in 20 C.F.R. § 416.967(b), with additional limitations: no constant handling, fingering, feeling or grasping with the right hand and low stress work, no high production demands; only simply routine, repetitive tasks with simple instructions, no interaction with the public and only minimal contact with others at the worksite. (PageID.48). At step five, the ALJ concluded that Plaintiff could not perform past relevant work, but that there were jobs available in significant numbers in the Florida state economy and the national economy, such as cleaner/housekeeper, DOT Code 323.687-014 (10,000 state jobs, 130,000 national jobs), Advertising Material Distributor, DOT Code 230.687-010 (1,200 state jobs, 48,000 national jobs), and Sales Attendant, DOT Code 299.677-010 (15,000 state jobs, 205,000 national jobs). Therefore, the ALJ determined that Plaintiff was not disabled as defined under the Social Security Act, since January 7, 2013. (PageID.54-55).

Plaintiff contends that the ALJ committed reversible error by (1) by failing to consider that the jobs relied upon to deny benefits were inconsistent with the RFC finding, and (2) by failing to consider that Plaintiff needed use of an assistive device such as a walker or a cane. In addition, Plaintiff claims that the Appeals Council erred by failing to determine that the new

medical evidence showing that Plaintiff fractured her pelvis and right tibia after being struck by an automobile three weeks prior to the ALJ's decision was a basis for a remand.

Plaintiff argues that the occupations that the ALJ concluded that she can perform each require contact with the public in contradiction to the limitations imposed by the ALJ. Therefore, Plaintiff argues that substantial evidence does not exist to support the ALJ's conclusion that jobs exist at the light exertional level that Plaintiff is able to perform. The ALJ found that Plaintiff could have "no interaction with the public." (PageID.48, 52). The ALJ accepted the vocational expert testimony that Plaintiff could perform the following jobs:

> **Cleaner, Housekeeping, DOT 323.687-014**:
>
> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons.
>
> **Advertising Material Distributor, DOT 230.687-010**:
>
> Distributes advertising material, such as merchandise samples, handbills, and coupons, from house to house, to business establishments, or to persons on street, following oral instructions, street maps, or address lists.
>
> **Sales Attendant, DOT 299.677-010**:
>
> Performs any combination of following duties to provide customer service in self-service store: Aids customers in locating merchandise. Answers questions from and provides information to customer about merchandise for sale. Obtains merchandise from stockroom when merchandise is not on floor. Arranges stock on shelves or racks in sales area. Directs or escorts customer to fitting or dressing rooms or to cashier. Keeps merchandise in order. Marks or tickets merchandise. Inventories stock.

After the vocational expert set forth these examples, the ALJ asked if the expert's opinion was consistent with the Dictionary of Occupational Titles:

7

> ALJ: You've identified over 350,000 jobs, actually over 370,000 jobs. Do all these over 370,000 jobs comply with all restrictions contained in the hypothetical in your opinion?
>
> VE: I believe they do, sir.
>
> ALJ: Have all the opinions you've expressed today been consistent with the characterizations and classifications contained in the Dictionary of Occupational Titles and its companion publication?
>
> VE: Yes, sir.

(PageID.83).

The ALJ has a duty under SSR. 00-4p to ask the vocational expert whether the testimony conflicts with the information provided in the Dictionary of Occupational Titles. *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 603 (6th Cir. 2009). The "ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry specified by SSR 00-4p." *Saunders v. Comm'r of Soc. Sec.*, 2010 WL 1132286 (W.D. Mich. 2010), citing *Lindsley* at 606. Rather, it is Plaintiff's representative's duty to raise any conflicts in the vocational expert's testimony and the Dictionary of Occupational Titles. See *Saunders* and Johnson v. *Comm'r of Soc. Sec.*, 2013 WL 1703894 (W.D. Mich. 2013) (where counsel fails to bring to the ALJ's attention discrepancies or conflicts with the Dictionary of Occupational Titles, it is too late to seek relief in federal court on such a ground). In this case, the ALJ fulfilled his duty under SSR 00-4p when he asked the vocational expert if his testimony was consistent with the Dictionary of Occupational Titles. Plaintiff's representative did not make any further inquiries regarding the positions that the vocational expert testified Plaintiff had the capacity to perform.

Plaintiff argues that each of the positions involve communication with the public and that contradicts the finding of the ALJ that Plaintiff could not interact with the public. The Dictionary of Occupational Titles refers to the "collective description" of jobs and each description

8

"refers to a grouping of numerous individual jobs with similar duties. *Lindsley,* at 605. Plaintiff must show that she was unable to perform each of the jobs of the representative occupations. *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006) ("Furthermore, even if the two positions about which there were inconsistencies had been excluded, the ALJ still could have reasonably found that Martin could perform the third position as assembler."); *Joyce v. Comm'r of Soc. Sec*. 662 Fed. Appx. 430, 437 (6th Cir. 2016) (Despite the ALJ's failure to inquire about the inconsistencies, Plaintiff does not argue that she was unable to perform each of the representative occupations.)

Even assuming that the ALJ erred by not questioning the vocational expert further regarding the need to interact with the public in order to perform the duties of a sales attendant, the ALJ was not required to question the vocational expert further as to the job duties of a cleaner/housekeeper or advertising materials distributor. On their face, the cleaner/ housekeeper and advertising materials distributor occupations do not obviously require interaction with the public. The Dictionary of Occupational Titles does not define these positions as necessarily requiring interaction with the public for all occupations under the definition. It was reasonable for the ALJ to determine that these positions did not involve interaction with the public. The ALJ's failure to inquire further regarding the exact job duties of these positions is not reversible error and does not require a remand.

Plaintiff argues that the ALJ erred by failing to consider her need for a handheld assistive device, such a walker or a cane. Specifically, state agency examiner Dr. Ijewere, M.D., found that Plaintiff immediately needed a wheelchair due to right hip and back issues and pain relief (PageID.436-442). Dr. Sergio B. Seoane prescribed a cane for Plaintiff, but the prescription

9

was not dated (PageID.652). The ALJ rejected this opinion based upon the totality of the medical evidence. The ALJ explained:

> In this case, evidence does establish underlying impairments of degenerative disc disease of the cervical spine and osteoarthritis as well as depression/anxiety disorder. However, the undersigned finds that the claimant's allegations have been quite out of proportion. Regarding the claimant's neck and back pain, clinical findings have been essentially within normal limits. There is very little diagnostic testing; however, what is available identifies no more than **mild** findings with mild-to-moderate compression deformity and canal stenosis. For example, x-rays of the lumbar in December 2012, showed early degenerative disc disease and **mild** endplate compression and an MRI of the cervical spine in March 2011, showed severe degenerative disc and endpate changes at C5-6 with concomitant moderate anterior wedge compression deformity of the superior endplate of C6 and moderate canal stenosis and straightening of the normal cervical lordosis, which likely reflects **muscle spasm**, X-rays of the right hip in November 2012, showed no fracture or dislocation involving the right hip. These are not diagnostic findings that are indicative of intractable, unrelenting pain. As a result, the undersigned finds the claimant has no restrictions imposed by this condition, which would prevent her from performing the residual functional capacity determined-above.
>
> With respect to her alleged mental status, treatment records show that the claimant is [compliant] with her treatment plan, to include medications and routine office visits. There is no evidence that the claimant has ever lost a job due to her mental status. While current objective/functional evidence suggests moderate limitations in social and concentration, her mental status is not of disabling proportions. However, giving the claimant the benefit of the doubt, the above-determined residual functional capacity restricts the claimant to only low stress work, no high production demands; only simple routine, repetitive tasks with simple instruction, no interaction with the public and only minimal contact with others at the worksite.
>
> Thus, weighing all relevant factors, the undersigned concludes that the claimant's subjective complaints do not warrant any additional limitations beyond those established in the residential functional capacity previously outlined in this decision.
>
> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor

> while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.
>
> Further, the undersigned has noted the Global Assessment of Functioning (GAF) scores as reported throughout the evidence; however, the GAF score cannot be used in isolation from the rest of the evidence to make a disability decision. It is also noted that the Commissioner has specifically declined to endorse the GAF scale for use in the disability programs and states that the GAF scale has no "direct correlation to the severity requirements in mental disorder listings."
>
> As for the opinion evidence, the undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. The undersigned finds the opinion of consultative examiner, Dr. Ijewere, to be persuasive in that the claimant has physical impairments causing some limitations. However, the opinion contains inconsistencies, rendering it less persuasive and contrasts sharply with other evidence in the record. It appears that Dr. Ijewere relied heavily on the subjective report of symptoms and limitations provided by the claimant and the totality of the evidence does not support the opinion.
>
> The undersigned gives substantial weight to the opinion of the State agency reviewing medical consultants, Dr. Cross and Dr. Troiano, at the initial and reconsideration level that the claimant is capable of light work. The opinion of the State agency-reviewing psychologists, Dr. Sagon and Dr. Davis, at the initial and reconsideration level that the claimant has no severe mental impairment is noted. However, these physicians did not have all the evidence of record and giving the claimant every benefit of the doubt, the undersigned finds that a moderate limitation in social and in concentration, persistence or pace is more compatible with the overall record.

(PageID.52-53) (citations omitted).

The ALJ considered Dr. Ijewere's opinion that Plaintiff needed a wheelchair and Dr. Seone's undated prescription for a cane. In rejecting Plaintiff's need for a cane or wheelchair, the ALJ considered the objective medical evidence that showed only mild to moderate

11

abnormalities. In addition, the ALJ considered Dr. Cross and Dr. Troiano's opinions that Plaintiff was able to perform light work. Both Dr. Cross and Dr. Troiano specifically rejected Dr. Ijewere's opinion that Plaintiff needed a wheelchair, finding inconsistencies in the report. Dr. Cross wrote:

> Also the CE provider documented conflicting sitting and supine SLR findings not consistent with radiculopathy (prior exams showed negative SLRs). There is no radiographic evidence of joint space narrowing, bony destruction, or ankyloses on any peripheral joint x-rays, nor is gross anatomical deformity present. There is evidence of calcifications at tendinous attachment sites at the right anterior superior iliac spine on the right hip x-ray 11/19/13, clearly not consistent with heterotopic ossification as could occur after a head injury or local injury and therefore a finding of no functional significance. The claimant has healed right tib/fib and right ulnar fxs with well documented cervical and lumbar degenerative spine but no objective evidence of radiculopathy, myelopathy, or myotomally medicated peripheral neurologic deficits.
>
> Credibility
> The DDS did not address credibility for this fully favorable decision. The claimant alleges limitations of personal care due to limitations of moving her neck, inability to lift herself out of the tub, and having to take breaks brushing her hair. She alleges having to take breaks while shopping, lifting limited to 5 pounds, can't walk more than 10 feet at a time, limitations of squatting, standing, reaching, sitting, kneeling, and climbing stairs. But she does not allege current use of any ADs. With no objective evidence of radiculopathy, myelopathy, myotomally mediated peripheral neurologic deficits, global RLE 3/5 strength but not muscle atrophy and no radiographic evidence of any joint pathology, the claimant's statements are at best partially credible.
>
> MSO
> The DDs found no MSOs. However the physical CE provider opined the claimant needed a wheel chair and pain relief ASAP. Since there is no objective evidence from his examination that a wheelchair is needed and no objective evidence of radiculopathy as discussed above, this opinion cannot be given any weight.

(PageID.161).

Dr. Troiano explained that the Dr. Ijewere relied heavily on Plaintiff's subjective report of her symptoms and his report was inconsistent and not based upon the totality of the evidence. (PageID.183). Dr. Troiano found:

> 3/2013 IM CE exam with suddenly a severe antalgic gait with all other prior exams showing a normal unassisted gait. Her motor strength was 5/5 in all her joints except RLE 3/5. She had diffuse decreased ROM of rt. shoulder, both knees and significant decreased ROM of rt. hip. Her cervical and lumbar spine were also decreased. She noted subjective tenderness in rt. shoulder and hip. However her manual dexterity was intact. She walked unassisted. Her SLRT testing were positive B/L 11-12/2012 ER TP exams showed 5/5 in all her extremities and from all her joints except cervical and lumbar spine with negative SLRT. More credence given to TP exams. Her rt. tib fib x-rays showed well healed fracture with no deformity or significant DJD. Her sensor exam was intact. Her lungs were clear to auscultation. Her heart had RR. She currently is not taking any medications for DM or seizures. There is significant credibility issues with her seizure allegations and sudden diffuse decreased ROM and abnormal gait with relatively unremarkable x-rays of hips and lumbar spine. Her allegations at best are partially credible. She appears capable of performing SGA with limitations described in this report.

(PageID.183).

There is conflicting medical opinion evidence in the record regarding Plaintiff's ability to ambulate with or without an assistive device. The objective medical evidence did not support a need for an assistive device showing only mild to moderate abnormalities. It is clear that the ALJ considered all the medical evidence and medical opinions in considering whether Plaintiff could perform light work with limitations. "Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx 172, 175-176 (6th Cir. 2009) citing *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 652 (6th Cir. 2006); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 391-92*, Martin v. Comm'r*

*of Soc. Sec.,* 170 Fed. Appx. 369, 372-73 (6th Cir. 2006); *Ford v. Comm'r of Soc. Sec.,* 114 Fed. Appx. 194, 197 (6th Cir. 2004). Substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff had the functional capacity for work.

Plaintiff argues that the Appeals Council erred by upholding the ALJ's decision, despite receiving new and material evidence relating to a motor vehicle accident that occurred on February 2, 2015, which was just before the ALJ issued his February 24, 2015 decision. Plaintiff submitted 71 pages of new medical records evidence relating to a motor vehicle accident, which occurred three weeks before the ALJ issued his decision. Plaintiff alleges that she fractured her pelvis and right tibia as a result of the accident. Plaintiff alleges that this evidence would have changed the outcome of this case if the ALJ could have considered this evidence. Plaintiff requests a remand so that this additional evidence may be considered.

It is first noted that this Court does not have jurisdiction to reverse the decision of the Appeals Council. *Saunders* at 2 ("This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ."). Remand to the Commissioner is the only remedy available to this court when new material evidence would likely change the outcome of this case.

Pursuant to 42 U.S.C. § 405(g), sentence four states:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

Sentence six states in relevant part:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good

> cause for the failure to incorporate such evidence into the record in a prior proceeding; . . .

The three requirements for a sentence six remand are: (1) that the evidence is new, (2) that the evidence is material, and (3) that good cause is shown why the evidence was not submitted to the ALJ. *Gillaspy*, 178 Soc. Sec. Rep. Serv. at *5. These requirements are fully explained in *Foster v. Halter*:

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L.E.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The Sixth Circuit has used a strict test for the "good cause" requirement in that "[t]he claimant must give a valid reason for failing to obtain relevant examinations prior to the hearing." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

The Commissioner argues that the evidence is not new and is not material. The Commissioner concedes that good cause existed for not presenting the medical records relating to the motor vehicle accident prior to the issuance of the ALJ's decision. However, the Commissioner argues that since the records were in existence prior to the ALJ's decision, the evidence fails to satisfy the "new" evidence requirement. Plaintiff presented medical records relating to the motor vehicle accident to the Appeals Council (PageID.683-723). Those records report that Plaintiff "demonstrates that she has regained her capacity to make her own decisions (PageID.683). Further, although Plaintiff suffered a fractured tibia and pelvis, the records do not reveal that she would not recover from her injuries. Clearly, the medical records were in existence

15

prior to the ALJ's decision. Evidence is not new if it was in existence prior to the ALJ's decision. *Franson v. Comm'r of Soc. Sec.,* 556 F. Supp. 2d 716, 724 (W.D. Mich. 2008).

Evidence is "material" for a sentence six remand only if the Commissioner reasonably could have decided the disability claim differently with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff has not made that showing. Interestingly, the Commissioner has presented additional medical records in her brief that post-date the records that Plaintiff submitted to the Appeals Council. These records were obtained from Plaintiff's most recent application for disability benefits. Plaintiff requests that the Court not consider these additional records, and has filed a motion to strike. Accordingly, the Court will grant Plaintiff's motion to strike those records. The record does not establish that a remand is appropriate in this case, because Plaintiff has failed to show that the "claimed "new" records could have caused the Commissioner to decide the claim differently. There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED. In addition, Plaintiff's motion to strike (ECF No. 7) is GRANTED, Plaintiff's request to file an additional brief is DENIED.


Dated: June 29, 2017

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE